UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ISABELLA F.,

                Plaintiff,

v.                                                     1:20-CV-1349
                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

FREDERICK LAW OFFICE, PLLC               SARAH FREDERICK, ESQ.
  Counsel for Plaintiff
4467 S. Buffalo St.
Orchard Park, NY 14127

U.S. SOCIAL SECURITY ADMIN.                KATHRYN POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 19.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1998. (T. 100.) She completed high school. (T. 294.) Generally, Plaintiff's alleged disability consists of epilepsy, dyslexia, central processing issues, and a learning disability. (T. 101.) Her alleged disability onset date is February 19, 1998. (T. 100.)

### B. Procedural History

On July 20, 2016, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 100.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 22, 2019, and again on May 13, 2019, Plaintiff appeared before the ALJ, Mary Sparks. (T. 32-89, 90-99.) On June 7, 2019, ALJ Sparks issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-26.) On July 22, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-20.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 20, 2016. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of: intractable epilepsy, attention deficit/hyperactivity disorder ("ADHD"), and dyslexia. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13.) Fourth, the ALJ found Plaintiff had

the residual functional capacity ("RFC") to perform work at all exertional levels with the additional limitations:

> she must avoid all exposure to extreme heat, dangerous, moving machinery and unprotected heights; she is limited to performing simple repetitive jobs defined as those having no more than 1 to 2 tasks as defined by the U.S. Department of Labor Employment and Training Administration in the Revised Handbook for Analyzing Jobs; she is limited to low stress jobs, defined as those having no more than occasional decision-making required, no more than occasional changes in the work setting, occasional interaction with the public; and she can have no more than occasional interaction with coworkers but could never work in tandem with coworkers.

(T. 15.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 19-20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in her step three determination that Plaintiff's epilepsy failed to meet Listing 11.02.  (Dkt No. 16 at 22-27.)  Second, and lastly, Plaintiff argues the ALJ erred in her step three determination that Plaintiff's intellectual disorders failed to meet Listings 12.05 or 12.11.  (*Id*. at 27-31.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly found that Plaintiff's epilepsy did not meet the criteria of Listing 11.02.  (Dkt. No. 18 at 6-13.)  Second, and lastly, Defendant argues Plaintiff did not meet the criteria of Listings 12.05 or 12.11.  (*Id*. at 13-18.)

## III.   RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.  ANALYSIS

In general, if the ALJ determines a plaintiff has a severe mental or physical impairment at step two, the ALJ must then determine whether the impairment meets the

criteria of any impairment listed in Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 416.920(d).

### A.  Listing 11.02: Epilepsy

Plaintiff argues the ALJ's conclusory step three analysis of Listing 11.02A and 11.02C was not based on the correct legal standard and was unsupported by substantial evidence.  (Dkt. No. 16 at 22-27.)  Plaintiff argues the ALJ misread evidence in the record regarding the frequency of Plaintiff's seizures and Plaintiff's adherence to prescribed treatment.  (*Id*.)  For the reasons outlined below, the ALJ's determination that Plaintiff's seizure impairment did not meet a Listing was proper and supported by substantial evidence.

Listing 11.02A requires generalized tonic-clonic seizures, occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.02A (2018)[1].  Listing 11.02C requires generalized tonic-clonic seizures, occurring at least once every two months for at least four consecutive months despite adherence to

---

[1] Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions).  Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.00H.

prescribed treatment; and a marked limitation in one of the following: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  *Id*. § 11.02C.

The ALJ concluded Plaintiff's seizure impairment did not meet the requirements of Listing 11.02A, 11.02B, or 11.02C.  (T. 13-18.)[2]  To be sure, although the ALJ outlined the criteria of the Listing at step three and stated Plaintiff's seizure impairment did not meet the criteria, the ALJ did not provide addition rationale to supper her determination.  (T. 14.)  However, "the absence of an express rationale does not prevent [a reviewing court] from upholding the ALJ's determination regarding [a plaintiff's] claimed listed impairments, [as long as] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."  *Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

Here, although the ALJ did not provide an express rationale in her step three discussion, the ALJ's conclusion that Plaintiff's seizure impairment did not meet Listing 11.02A or 11.02C is supported by substantial evidence in the record.  Indeed, in her step four analysis, the ALJ discussed evidence in the record of Plaintiff's seizure disorder including objective reports of the frequency of Plaintiff's seizures.  As outlined by the ALJ, Plaintiff's seizures did not meet the frequency requirement of Listing 11.02A or 11.02C.

---

[2] Plaintiff does not assert the ALJ erred in her determination that her seizure impairment did not meet Listing 11.02B.  (Dkt. No. 16.)

7

Plaintiff asserts evidence in the record supports of a finding that the frequency of seizures satisfies the criteria of Listing 11.02A.  (Dkt. No. 16 at 24.)  To be sure, notations from March 2019 contain Plaintiff's self-reports of "two severe seizures a month" and a form completed by NP Patricia Rogers states Plaintiff had seizures "up to twice a month." (T. 615, 641.)  The ALJ considered this evidence; however, she noted that objective evidence did not support the frequency of Plaintiff's reported seizures, and seizures had been relatively well-controlled on medication.  (T. 16); *see Sierra M. B. v. Saul*, No. 1:20-CV-0127, 2020 WL 7316121, at *5 (N.D.N.Y. Dec. 11, 2020) (ALJ properly found plaintiff failed to establish frequency of seizures required to meet Listing 11.02 where objective evidence did not support plaintiff's reported frequency).  Further, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record.  (T. 15); *see Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (an ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible).

The ALJ relied on additional information in the record that supported her determination that Plaintiff's seizures did not meet the Listing requirements.  As the ALJ noted, in January 2016, Dr. Olga Seliaoutski stated Plaintiff had been seizure free for over two years.  (T. 16, 405.)  The ALJ further considered that in April 2016, Plaintiff reported a seizure after a medication change.  (T. 16, 428.)  In September 2016, Plaintiff informed consultative examiner, Harbinder Toor, M.D., that she had not had a seizure since April 2016 and remained seizure free.  (T. 469.)

8

In November 2017, treating neurologist, Lynn Liu, M.D., noted Plaintiff had "infrequent seizures" on her current medication regimen; however, Dr. Liu advised adjusting Plaintiff's medications, specifically tapering Depakote.  (T. 16, 535, 538 (noting October 2016 and May 2017 seizures).)  The ALJ further considered evidence that Plaintiff did not report another seizure until seven months later in June 2018.  (T. 16, 554.)  During her June 2018 visit, Plaintiff expressly reported she had previously been "seizure free until the Saturday before [her] visit today [June 19, 2018]."  (T. 16, 559.)  Plaintiff reported having a seizure while sleeping in a hot room.  (T. 16, 559.)  Dr. Liu advised adjusting Plaintiff's medications, but she declined at that time.  (T. 561.)  In September 2018, Plaintiff informed Dr. Liu she had not had any further seizures.  (T. 615.)  Plaintiff wanted to adjust her medications as Dr. Liu had recommended.  (*Id*.)

As noted by the ALJ, the record contains no objective documents of further seizure activity until January 2019.  (T. 16.)  In January 2019, Dr. Liu noted Plaintiff successfully transitioned her medications; however, she continued to have seizures.  (T. 590.)  Plaintiff reported two seizures in November and two to three seizures in January.  (*Id*.)  Dr. Liu noted a seizure occurred after medication adjustment.  (*Id*.)  In addition, Plaintiff told Dr. Liu her seizures "could be" due to excitement of upcoming trip and not sleeping well.  (*Id*.)

There is no objective evidence in the record Plaintiff received treatment for seizures in November 2018 and January of 2019.  On January 22, 2019, Dr. Liu wrote that Plaintiff "continues to have generalized convulsions every couple of months despite adjustments to her medications."  (T. 593.)  Plaintiff's mother called Dr. Liu's office to report that Plaintiff had a seizure on February 6, 2019.  (T. 602.)

In March 2019, NP Patricia Rogers noted Plaintiff had "absence seizures" one to two times a year and tends to have generalized seizures just before going to bed when she has been tired.  (T. 614.)  Plaintiff reported to NP Rogers she was having approximately two "severe seizures" a month which take her three days to recover from and after a seizure she must use a cane to ambulate.  (T. 615.)

In April NP Rogers completed a form titled "Seizures Medical Opinion."  (T. 641-644.)  NP Rogers stated Plaintiff has seizures "up to twice a month always has generalized seizures [and] frequently has oral trauma or absence seizures."  (T. 641.)  When asked what is the average frequency of seizures, NP Rogers wrote "2 per month."  (T. 642.)  She stated after a seizure Plaintiff is "unable to function in daily activities for the remainder of the day at least."  (*Id*.)

As stated by the ALJ, NP Rogers's assessment as to the frequency of Plaintiff's seizures is not supported by the record.  (T. 18.)  Indeed, despite informing NP Rogers she had two seizures monthly, the record indicated Plaintiff reported a seizure on October 9, 2016 (T. 535); a seizure on May 30, 2017 (T. 535); a seizure between June 2017 and November 28, 2017 (T. 535); no seizures until one in June 2018 (T. 554); two seizures in November 2018 (T. 590), two to three seizures in January 2019 (T. 590), and a seizure in February 2019 (T. 602).

In connection with NP Roger's statement, the ALJ noted in April 2019 Plaintiff "explicitly advised treating sources that she did not require a follow up appointment."  (T. 16, 630.)  To be sure, the ALJ misread this notation.  As outlined by Plaintiff, the April 2019 notation stated a follow up appointment was not required to complete a "form."  (Dkt. No. 16 at 25.)  However, the ALJ's misreading of the notation does not affect her

ultimate determination that the frequency of seizures reported by NP Rogers are not supported by the record.  Therefore, substantial evidence in the record supports the ALJ's determination that Plaintiff's seizures did not meet the criteria of Listing 11.02A.

Further, the record does not support the conclusion the frequency of Plaintiff's seizures meets the required criteria of Listing 11.02C.  Under Listing 11.02C, in part, Plaintiff must suffer from a generalized tonic-clonic seizure, occurring at least once every two months for at least four consecutive months, despite adherence to prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.02C (2018).  Based on evidence in the record, as outlined above, the record fails to indicate Plaintiff had at last one seizure every two months for at least four consecutive months.  Because Plaintiff does not meet the frequency requirements of Listing 11.02C, Plaintiff's argument that her epilepsy meets the secondary criteria for 11.02C is without merit.  (Dkt. No. 16 at 25); *see Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1) (a plaintiff's impairment "must meet all of the specified medical criteria" of a listing).

Plaintiff cites to evidence, well before the relevant period, to support her argument that she had difficulty with manual dexterity and required substantial supports in school and therefore the ALJ failed to properly assess the "paragraph B" criteria. (Dkt. No. 16 at 25.)  As discussed in detail below, the ALJ properly assessed the "B" criteria in assessing Plaintiff's mental abilities.  Therefore, even assuming *arguendo*, that Plaintiff met the seizure frequency required by Listing 11.02C, she still would not meet the second prong of the Listing, because she did not have marked limitations in physical functioning, understanding, remembering, or applying information, interacting

with others, concentrating persisting or maintaining pace, or adapting or managing oneself, areas referred to herein as the "B" criteria. Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 11.02C.

Overall, objective evidence in the record does not support the frequency of Plaintiff's seizures as reported by NP Rogers and because the evidence fails to show Plaintiff suffered at least one seizure a month for three consecutive months despite treatment, she failed to prove she met the required criteria of Listing 11.02A. The record further does not support Plaintiff's seizures met the frequency criteria of Listing 11.02C. Therefore, although the ALJ did not explicitly discuss the frequency of Plaintiff's seizures in his step three determination, the ALJ's reasoning for concluding Plaintiff's impairment did not meet the requirements of Listing 11.02A or C is clearly laid out in his step four analysis.

### B. Listing 12.05B: Intellectual Disorder and Listing 12.11: Neurodevelopmental Disorders

Plaintiff argues the ALJ failed to properly evaluate whether Plaintiff satisfied the criteria of Listing 12.05B, evidence in the record supports a finding that Plaintiff's cognitive impairments met the criteria of the Listing, the ALJ failed to properly complete the "special technique," and the ALJ committed legal error in failing to obtain a report from an agency reviewing psychiatrist or psychologist using the current standard for the evaluation of mental impairments. (Dkt. No. 16 at 27-31.)[3]

### i.) Special Technique

---

[3] Of note, at step two of the sequential process the ALJ determined Plaintiff's medically determinable impairments of anxiety and depression were non-severe. (T. 13.)

The psychiatric review technique, as known as "the special technique," requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the listings for adult mental disorders.  20 C.F.R. § 416.920a, *see Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008).

In 2016, the Administration made changes to the Listings used to evaluate claims involving mental disorders, effective January 17, 2017.  *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed, Reg. 66138-01 (Sept. 26, 2016).  Prior to January 17, 2017, the limitations in four broad functional areas were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1 (2016).  After January 17, 2017, the four functional areas were amended to: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 416.920a(c)(3). In assessing the functional areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." *Id*. § 416.920a(c)(4).  Although Plaintiff filed her claim for benefits prior to the changes, the ALJ issued her decision in June 2019, after the changes took effect.  In her decision, the ALJ properly assessed "paragraph B" criteria under the revised criteria.  (T. 14.)

Both Listing 12.05B and 12.11 contain "paragraph B" criteria which require: an extreme limitation of one or marked limitation of two paragraph B areas: 1. understand, remember, or apply information; 2. interact with others; 3. concentrate, persist, or

13

maintain pace; and 4. adapt or manage oneself.  20 C.F.R. Part 404, Subpart P, §§ 12.05, 12.11.

At step three, the ALJ concluded that Plaintiff's ADHD did not meet or equal "any mental health listing."  (T. 14.)  The ALJ proceeded to apply the "special technique" to evaluate Plaintiff's alleged mental impairments.  Under the paragraph B criteria, the ALJ determined Plaintiff had moderate difficulty understanding, remembering, or applying information; moderate difficulty interacting with others; moderate difficulty concentrating, persisting, or maintaining pace; and moderate difficulty adapting or managing herself.  (T. 13-15.)  The ALJ stated that evidence supporting his finding of moderate limitations was discussed "in greater detail" in his step four analysis.  (T. 14.)  However, the ALJ did state the findings were supported by Plaintiff's "relatively high functioning activities of daily living, documented clinical findings on mental status examination, and the weight of the medical opinion evidence in the record."  (*Id*.)

Therefore, contrary to Plaintiff's assertion that the ALJ did not make specific findings for the special technique (Dkt. No. 16 at 28), the ALJ expressly found Plaintiff's mental conditions caused moderate limitations in her ability to understand, remember, or apply information; moderate restrictions in interacting with others; moderate limitations in her ability to concentrate, persist, or maintain pace; and moderate limitations in adapting or managing oneself.  (T. 14.)  In addition, the ALJ's determination was proper and supported by substantial evidence.

Regarding the special technique, and Plaintiff's mental impairments, the ALJ stated that her findings were supported by Plaintiff's "relatively high functioning activities of daily living, documented clinical findings on mental status examination, and the

14

weight of the medical opinion evidence of record." (T. 14.)  The ALJ also explicitly stated that she discussed the evidence supporting her determination in further detail in the remainder of the decision and proceeded to discuss supporting evidence in her step four analysis.  (T. 14, 17-18.)

Regarding Plaintiff's ADHD, the ALJ considered treatment Plaintiff received and noted symptoms were managed with "conservative treatment" and prescription medication.  (T. 17.)  The ALJ further considered evidence of Plaintiff's dyslexia and intellectual testing.  (*Id.*)  The ALJ noted Plaintiff's "low average" range of scores suggested "some, but not marked" limitations with her ability to read.  (*Id.*)  The ALJ considered Plaintiff's reading deficits and limited Plaintiff to simple, repetitive jobs.  (T. 15, 17.)  The ALJ considered average testing scores and concluded that, overall, Plaintiff's intellectual abilities were "largely within normal limits."  (17.)  The ALJ then considered Plaintiff's activities of daily living.  (*Id.*)  The ALJ noted Plaintiff worked part-time at Wegman's grocery store, did her own laundry, drew, played video games, watched television, spent time with friends, and rode her bike.  (*Id.*)  The ALJ concluded her activities were consistent with the RFC determination.  (*Id.*)

In addition to objective evidence and Plaintiff's activities, the ALJ relied on the medical opinion provided by consultative examiners, Kristina Luna, Psy.D. and Christine Ransom, Ph.D., and non-examining State medical consultant, Dr. Brown.  (T. 18.)  In 2016, Dr. Luna concluded Plaintiff had no limitations in her ability to maintain attention and concentration, maintain a schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress.  (T. 477.)  Dr. Luna opined Plaintiff had only mild limitations in her ability to follow and understand simple directions and instructions, and

relate adequately with others.  (*Id.*)  Dr. Luna also found that Plaintiff had good adaptive functioning in all areas.  (*Id.*)  In 2018, Dr. Ransom opined Plaintiff had no limitations:

> understanding, remembering and applying simple and complex directions and instructions, using judgment and reasoning to make work related decisions, interact adequately with supervisors, coworkers and public, sustain concentration to perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior and maintain wellbeing, maintain personal hygiene and attire and be aware of normal hazards and take precautions.

(T. 484.)  Dr. Brown opined Plaintiff had mild limitations in activities of daily living; no limitations in maintaining social functioning; moderate limitation maintaining concentration, persistence or pace; and no episodes of decompensation.  (T. 106.)

Plaintiff argues that the ALJ was required to seek a new State agency opinion evaluating her functioning under the revised special technique criteria.  (Dkt. No. at 29-30.)  However, where an ALJ considers medical opinions that address all areas relevant to the revised "B" criteria, there is no need for further development.  *Monica L., v. Comm'r of Soc. Sec.*, No. 19-CV-01435, 2021 WL 630909, at *7 (W.D.N.Y. Feb. 18, 2021).  Although Dr. Brown outlined his opinion under the pre-revised "B" criteria, the ALJ's determination was proper and supported by the evidence in the recording including the medical opinion evidence as outlined above.

Therefore, the ALJ properly applied the special technique, and her determination is supported by substantial evidence in the record.  Because Plaintiff does not meet the "paragraph B" requirements of Listing 12.05B and Listing 12.11, Plaintiff's remaining arguments that evidence in the record supports other criteria of the Listings is without merit.  (Dkt. No. 16 at 25); *see Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885,

107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1) (a plaintiff's impairment "must meet all of the specified medical criteria" of a listing).

### ii.) Listing 11.02C and Marked Limitations in Physical Functioning

Listing 11.02C, requires, in part: a marked limitation in one of the following: physical functioning; or understanding, remembering, or applying information; or interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself.  20 C.F.R. § 404, Subpt. P, App'x 1§ 11.02C.

Plaintiff argues that she had marked physical limitations and marked mental limitations that would meet the Listing criteria. (Dkt. No. 16 at 26-29.)  As outlined above, the ALJ properly concluded Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Therefore, Plaintiff's argument that she had a marked limitations in mental functioning under the Listing fails.

Plaintiff's argument, that she had a marked limitation in physical functioning, also fails. (Dkt. No. 16 at 26-29.)  Regarding physical limitations as required by Listing 11.02C, Plaintiff cites to evidence from 2011, well before the relevant period, to support her argument that her difficulty with manual dexterity at that time supports a finding of a marked physical limitation. (Dkt. No. 16 at 25.)  However, evidence from the relevant period does not show marked physical limitations.

In her decision, the ALJ considered the objective physical examination performed by consultative examiner, Dr. Harbinder Toor, M.D., at which time he concluded Plaintiff did not have any objective findings on exam. (T. 469-471.)  Plaintiff exhibited intact hand and finger dexterity, and full (5/5) grip strength.  (T. 471.)  In addition, providers

noted during multiple examinations between 2017 and 2019, Plaintiff exhibited normal physical examination findings, including normal gait, normal coordination, normal motor functioning, and intact sensation. (T. 537-538, 560, 591-592, 617, 624.) Furthermore, as the ALJ also considered, Plaintiff worked as a cashier at Wegman's during the relevant period, a job that requires manual dexterity. (T. 17, 38.) Therefore, evidence in the record supports the ALJ's conclusion that Plaintiff did not have a marked physical impairment. Indeed, as concluded by ALJ at step two, Plaintiff did not have a severe physical impairment. (T. 13.)

Overall, the ALJ properly assessed Plaintiff's severe impairments at step three and her determination that the impairments did not meet or medically equal a Listing was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:       January 24, 2022

　　　　　　　　　　　　　　　　　　　　　　　　William B. Mitchell Carter
　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge